UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WILLIAM RUSSELL, Individually and for Others Similarly Situated,<br><br>v.<br><br>BWS INSPECTION SERVICES, LLC | **Case No. 6:22-CV-00910-ADA-JCM**<br><br>Collective Action<br><br>Jury Trial Demanded |

**RUSSELL'S MOTION FOR DISTRIBUTION OF COURT-AUTHORIZED NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

Respectfully submitted,

**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
**Olivia R. Beale**
State Bar No. 24073014
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100
Fax: (713) 352-3300
adunlap@mybackwages.com
mjosephson@mybackwages.com
obeale@mybackwages.com

**Richard J. (Rex) Burch**
Fed. Id. 21615
State Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
Fax: (713) 877-8065
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**

TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................i

TABLE OF AUTHORITIES................................................................................................................ii

I.      INTRODUCTION..................................................................................................................1

II.     FACTUAL BACKGROUND...................................................................................................3

III.    ARGUMENTS AND AUTHORITIES. .....................................................................................6

        A.     Legal standard for collective actions under the FLSA § 216(b)......................................6

        B.     Russell and the Day Rate Workers are similarly situated because their FLSA claims depend on BWS's pay practice, not on any individualized inquiries. ............................7

        C.     Notice is appropriate even with variations in job titles or duties. ..................................9

IV.    THE COURT SHOULD APPROVE AND ADOPT RUSSELL'S PROPOSED NOTICE PLAN. ................11

        A.     Russell's proposed notice and plan should be approved...................................................12

        B.     Notice should be sent by text, e-mail, and regular mail. ..................................................12

        C.     A sixty-day notice period is appropriate...........................................................................13

        D.     Class members should be allowed to electronically execute their consent forms........14

        E.     BWS should be required to produce names and contact information of the Day Rate Workers to carry out notice.............................................................................................14

V.     CONCLUSION. ................................................................................................................15

**T**ABLE OF **A**UTHORITIES

Page(s)

Cases

*Abdul-Rasheed v. KableLink Commc'ns, LLC,*
  No. 8:13-CV-879-T-24, 2013 WL 5954785, at *5 (M.D. Fla. Nov. 7, 2013)....................................13
*Aguirre-Molina v. Truscapes SW Fla Inc.,*
  No. 2:15-CV-608-FTM-38CM, 2016 WL 4472992 (M.D. Fla. Aug. 3, 2016)...................................13
*Alvarez v. NES Glob. LLC,*
  No. 4:20-CV-1933, 2021 WL 3571223 (S.D. Tex. Aug. 11, 2021)...............................................passim
*Badon v. Berry's Reliable Res., LLC,*
  No. 19-12317, 2021 WL 933033 (E.D. La. Mar. 11, 2021).................................................................6
*Ballew v. Lennar Corp.,*
  2008 WL 4218137 (M.D. Fla. Sept. 11, 2008)...................................................................................13
*Butler v. Direct SAT USA, LLC,*
  876 F. Supp.2d 560 (D. Md. 2012) ....................................................................................................12
*Clarke v. Pei Wei Asian Diner, LLC.,*
  No. 3:20-CV-00800-N, 2020 WL 7122861 (N.D. Tex. Dec. 4, 2020) .............................................14
*Collins v. Pel-State Bulk Plant, LLC,*
  No. 20-cv-83, 2021 WL 5234968 (W.D. Tex. Sept. 29, 2021).............................................................9
*Cornell v. World Wide Bus. Servs. Corp.,*
  No. 2:14-CV-27, 2015 WL 6662919 (S.D. Ohio Nov. 2, 2015)........................................................10
*Cotton-Thomas v. Volvo Grp. N. Am., LLC,*
  No. 3:20-CV-113-GHD-RP, 2021 WL 2125003, at *2 (N.D. Miss. May 25, 2021)......................6, 7
*Denney v. Lester's, LLC,*
  2012 WL 3854466 (E.D. Mo. Sept. 5, 2012) ....................................................................................12
*Diaz v. Applied Mach. Corp.,*
  No. CV H-15-1282, 2016 WL 3568087 (S.D. Tex. June 24, 2016).....................................................14
*Fenley v. Wood Group Mustang, Inc.,*
  325 F.R.D. 232 (S.D. Ohio 2018) .....................................................................................................10
*Fiore v. Goodyear Tire & Rubber Co.,*
  2011 WL 867043 (M.D. Fla. March 10, 2011) .................................................................................13
*Helix Energy Sols. Grp., Inc. v. Hewitt,* No. 21-984,
  598 U.S. --- .............................................................................................................................1, 2, 3, 7
*Hoffmann-La Roche, Inc. v. Sperling,*
  [493 U.S. 165, (1989) ..................................................................................................................1, 11
*In re Deloitte & Touche, LLP Overtime Litig.,*
  2012 WL 340114 (S.D.N.Y. Jan. 17, 2012)......................................................................................12
*In re JPMorgan Chase & Co.,*
  916 F.3d 494 (5th Cir. 2019) ...............................................................................................................1
*Irine v. Destination Wild Dunes Mgmt., Inc.,*
  132 F. Supp. 3d 707 (D.S.C. 2015) ...................................................................................................12
*Jones v. JGC Dallas LLC,*
  2012 WL 6928101 (N.D. Tex. Nov. 29, 2012)...................................................................................13

*Kraft v. Freight Handlers, Inc.*,
   2019 WL 3854989 (M.D. Fla. May 21, 2019) ........................................................................12
*Landry v. Swire Oilfield Servs., L.L.C.*,
   252 F. Supp. 3d 1079 (D.N.M. 2017) ............................................................................. 12, 13
*Lewis v. Huntington Nat. Bank*,
   2011 WL 8960489 (S.D. Ohio June 20, 2011) .....................................................................12
*Loy v. Rehab Synergies, LLC*,
   No. 7:18-cv-00004, 2021 WL 3931926 (S.D. Tex. Sept. 2, 2021) ...................................... 9, 10
*Lusardi v. Xerox Corp.*,
   118 F.R.D. 351 (D.N.J. 1987) .............................................................................................5
*Mraz v. Aetna Life Ins. Co.*,
   2014 WL 5018862 (M.D. Pa. Oct. 7, 2014) .........................................................................13
*Regan v. City of Hanahan*,
   2017 WL 1386334 (D.S.C. Apr. 18, 2017) ..........................................................................12
*Sandoz v. Cingular Wireless, LLC*,
   553 F.3d 913 (5th Cir. 2008) ...............................................................................................3
*Segovia v. Fuelco Energy LLC*,
   No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *7 (W.D. Tex. May 28, 2021) ............................ 6, 7
*Sterling v. Greater Hous. Transp. Co.*,
   No. H-20-910, 2021 WL 2954663 (S.D. Tex. July 14, 2021) ....................................................9
*Swales v. KLLM Transp. Servs., L.L.C.*,
   985 F.3d 430 (5th Cir. 2021) .......................................................................................passim
*Torres v. Chambers Protective Services, Inc.*,
   No. 20-CV-212-H, 2021 WL 3419705 (N.D. Tex. Aug. 5, 2021) .............................................9
*Vargas v. Richardson Trident Co.*,
   No. H-09-1674, 2010 WL 730115, at *11 (S.D. Tex. Feb. 22, 2010) .....................................11
*Vega v. Point Security, LLC*,
   2017 WL 4023289 (W.D. Tex. Sept. 13, 2017) ...................................................................12
*White v. Integrated Elec. Techs., Inc.*,
   2013 WL 2903070 (E.D. La. June 13, 2013) .......................................................................13

Statutes

15 U.S.C. § 7001 ...............................................................................................................14
29 U.S.C. § 216(b) ...................................................................................................... 1, i, 10

## I.    INTRODUCTION.

Russell brought this collective action alleging BWS misclassified him and other inspectors like him as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA"). But the other BWS inspectors like Russell "cannot benefit from a collective action without 'accurate and timely notice,' as the Supreme Court put it in *Hoffmann-La Roche, Inc. v. Sperling* [493 U.S. 165, 170, (1989)]." *Swales v. KLLM Transp. Servs., L.L.C.,* 985 F.3d 430, 435 (5th Cir. 2021). "[D]istrict courts… oversee the notice and opt-in process." *Id.* They do so by authorizing notice to potential plaintiffs of the collective action. *Id.* "Permitting the court to facilitate notice helps ensure both efficient resolution in one proceeding of common issues and that employees will receive accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *In re JPMorgan Chase & Co.,* 916 F.3d 494, 500 (5th Cir. 2019) (cleaned up).

To that end, Russell requests the Court approve notice of this collective action be sent to:

> **All current and former inspectors who worked for or on behalf of BWS Inspection Services, LLC that were paid a day rate at any time in the past three (3) years (the "Day Rate Workers").**

"[T]he district court's job is ensuring that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case." *Swales*, 985 F.3d at 440. So neither the merits of Russell's claims nor BWS's defenses are at issue. *Id.* at 436. Instead, the Court only considers "whether merits questions can be answered collectively." *Id.* at 442.

The answer to that question is simple for day rate workers who aren't paid overtime. The Supreme Court recently confirmed workers paid solely on a day rate are "entitled to overtime pay" because they are "not paid on a salary basis." *Helix Energy Sols. Grp., Inc. v. Hewitt*, No. 21-984, 598 U.S. ----, 2023 WL 2144441 at *3. Day rate workers are only paid on a salary basis if—in addition to their day rate—(1) they are guaranteed a "minimum salary" "regardless of the number of hours, days or shifts worked;" and (2) the guarantee "bears a reasonable relationship to the amount actually earned

1

in a typical week." *Id.* at *5 (cleaned up). "Those conditions create a compensation system functioning much like a true salary—a steady stream of pay, which the employer cannot much vary and the employee may thus rely on week after week." *Id.* (citing 69 Fed. Reg. 22184). Otherwise, day rate workers' pay varies directly with the number of days they work. *Id.* at *1 ("he receives a certain amount if he works one day in a week, twice as much for two days, three times as much for three, and so on"). So here, if BWS failed to pay its inspectors a guaranteed salary in addition to their daily rate, it can't satisfy the salary basis test and has illegally misclassified its inspectors as exempt under the FLSA **regardless of their job titles, job duties, or work locations**. *Id.*

The Court can (and should) find Russell and the Day Rate Workers are similarly situated because the question of whether BWS's day rate policy satisfied the salary basis test is best answered collectively. Russell was an inspector for BWS from approximately October 2020 to November 2022. Ex. 2 ¶¶ 3-4. BWS paid him a day rate. *Id.* ¶ 7. "If [he] did not work, [he] would not get paid." *Id.* ¶ 8. "Regardless of how many hours [he] worked, BWS never paid [him] overtime." *Id.* ¶ 10. That's true even though Russell routinely worked far more than 40 hours in a week. *Id.* ¶ 5. Other BWS inspectors were paid a day rate without overtime just like Russell. *Id.* ¶ 20-24. In fact, "BWS paid all its inspectors the same way: a set daily rate for each day worked." *Id.* ¶ 22. None were paid overtime, *id.* ¶ 20, despite regularly "work[ing] more than forty hours per week." *Id.* ¶ 25. Critically, Russell and the other inspectors weren't guaranteed a salary. *Id.* ¶¶ 11, 23. Again, these facts alone are sufficient to establish that "merits questions can be answered collectively." *Swales*, 985 F.3d at 442; *see Helix*, 2023 WL 2144441 at *2 ("daily-rate workers … qualify as paid on a salary basis only if the conditions set out in § 541.604(b) are met"). The Court can stop here and authorize notice to the Day Rate Workers as requested regardless of their specific job titles, duties or work locations.

That's true because any difference in job titles, duties or work locations won't change the fact that BWS violated the FLSA if it didn't pay Russell and the Day Rate Workers on a salary basis. Even

so, all BWS inspectors performed similar inspection duties. While their specific job titles may have differed in minor respects (*e.g.*, a "welding inspector" versus a "coating inspector"), they all have the same basic primary job duties. They were all "required to follow the specifications and guidelines set in place by BWS and/or its clients." Ex. 2 ¶ 16, 26. None could "make significant decisions on behalf of BWS." *Id.* ¶ 17, 27. No inspector had "the authority to hire or fire workers." *Id.* ¶ 18, 27. And none of them "perform[ed] managerial duties for BWS or perform[ed] any tasks that could be described as administering BWS's business operations." *Id.* ¶¶ 19, 28.

Timely notice is imperative in this case. As each day passes, the statute of limitations continues to run on each of the putative collective members' claims. *See, e.g., Sandoz v. Cingular Wireless, LLC*, 553 F.3d 913, 916-17 (5th Cir. 2008). What's more, BWS has a history of threatening workers for participating in FLSA overtime cases. *See* Ex. 3, Opt-in withdrawal from *Sisk v. BWS* ("After I signed up for this lawsuit, I got a call from Blake Reed about the case. As a result of speaking with Blake Reed [BWS's Owner and President], I feel like pursuing the lawsuit would hurt me professionally."). So the putative class should be informed of their right to pursue their overtime claims free of retaliation as soon as possible. The evidence shows BWS paid Russell and the Day Rate Workers the same way: a daily rate, without overtime, and without a minimum guarantee. Whether that common policy violated the FLSA overtime requirements can be determined on a collective basis. *See Helix*, 2023 WL 2144441. On top of that, BWS's inspectors share common primary job duties that do not qualify for any overtime exemption. The Court should grant this Motion and authorize notice to the putative collective members, *see* Ex. 1, Proposed Notice.

## II.     FACTUAL BACKGROUND.

BWS provides pipeline inspection services throughout the United States. *See* Doc. 15 ¶ 20; *Sisk v. BWS*, No. 4:21-cv-00087, Doc. 1 ¶ 20 (W.D. Tex. December 8, 2021). To do so, it employs inspectors like Russell and pays them on a day rate basis. *See* Ex. 2 ¶¶ 7, 22; Doc. 15 at ¶¶ 3, 8, 22, 28,

44. That is, BWS paid all Day Rate Workers a set amount for each day worked regardless of the number of hours they worked each day. Ex. 2 ¶ 10, 22, 23. It did not pay them a minimum, guaranteed amount each week separate from their day rate pay. Ex. 2 ¶¶ 11, 23; Doc. 15 at ¶¶ 3, 8, 22, 28, 44.

BWS required Russell and putative collective members to work in excess of 40 hours per week and they, in fact, routinely and customarily work over 40 hours per week. *See* Ex. 2 ¶¶ 5, 13, 14, 25; Doc. 15 at ¶¶ 40, 42, 43. Despite working well over 40 hours per week, Russell and putative collective members did not receive overtime compensation from BWS. *See* Ex. 2 ¶¶ 10, 20; Doc. 15 at ¶¶ 40, 42, 44, 46. Instead, BWS only pays these workers on a day rate basis with no overtime pay and, importantly, with no guaranteed weekly salary separate from that day rate pay. *See* Ex. 2, ¶ 7 ("BWS paid me a day rate. For each day I worked, I was paid the same daily rate."), ¶ 8, ¶ 10 ("Regardless of how many hours I worked, BWS never paid me overtime."), ¶ 20, ¶ 22 ("BWS paid all its inspectors the same way: a set daily rate for each day worked."); Doc. 15 at ¶¶ 3, 8, 22, 28, 44. In other words, if BWS schedules inspectors to work one shift per week, they are only paid for that one shift and are not paid a separate guaranteed amount that would satisfy the salary basis test.

BWS's timekeeping and payroll records confirm its common pay practice. For example, when submitting his timesheets, Russell just marked that he worked that day or put a flat 10 or 12 hours.

4

**BWS Inspection Services LLC**
604 N MLK JR HWY/PO BOX 1515
Mexia, Tx 76667
254-562-5404/254-562-6570
254-562-6580          Fax
timesheet@bwsservicesllc.com

## TIMESHEET

| | |
|---|---|
| Employee Name | William Russell |
| Pay Period Ends Friday | 9/10/2021 |
| Employee Classification | Lead NACE |
| Client Name | Energy Transfer |
| Client Supervisor | DARWIN DELGADO |
| Client Supervisor email | DARWIN.DELGADO.JR@OUTLOOK.CC |
| Employee's Signature | *William Russell* |
| Supervisor's Approval | |

**DUE FRIDAY by MIDNIGHT**

| City, State Working In: | EX) Cushing, Oklahoma | | | | |
|---|---|---|---|---|---|
| Date | DAYS WORKED | PER DIEM | MILEAGE | ATV *If Applicable* | WBS #/Job Number/Project Name/Remarks |
| 9/4/2021 | Y | Y | 0 | N | TANK 7200/7100 |
| 9/5/2021 | Y | Y | 0 | N | TANK 7200/7100 |
| 9/6/2021 | Y | Y | 0 | N | TANK 7200/7100 |
| 9/7/2021 | Y | Y | 0 | N | TANK 7200/7100 |
| 9/8/2021 | Y | Y | 0 | N | TANK 7200/7100 |
| 9/9/2021 | Y | Y | 0 | N | TANK 7200/7100 |
| 9/10/2021 | Y | Y | 0 | N | TANK 7200/7100 |
| | | | | | |

Ex. 4, at 2. BWS then paid Russell *the same amount for every day worked*. Also known as a day rate. And BWS inspectors were paid their daily rate regardless of their specific job title. Ex. 2 ¶¶ 22. BWS has not produced any evidence tending to show these workers were guaranteed a salary regardless of the number of days worked. That's because they weren't. Ex. 2 ¶¶ 11, 23.

The job duties performed in BWS inspectors were also sufficiently similar. Russell and the putative class members were inspectors in the oil and gas industry. Doc. 15 at ¶¶ 10, 20. Their job duties included physical labor and ordinary visual and manual inspection work for BWS's oil and gas customers. *Id.* Neither Russell nor BWS's other inspectors could deviate from policies and procedures established by BWS or its clients. Ex. 2 ¶¶ 16, 26; Doc. 15 at ¶¶ 32.[1] Russell and BWS's other inspectors could not make significant decisions on behalf of BWS. Ex. 2 ¶¶ 17, 27. Nor could they hire or fire workers, perform managerial duties for BWS, or perform tasks that could be described as

---

[1] *See also Sisk*, Doc. 1 ¶ 51 ("BWS requires Sisk and the Day Rate Inspectors to follow BWS and/or its clients' policies and procedures") (admitted in *Sisk*, Doc. 8 ¶ 51, "Defendant admits the factual allegations in Paragraph 51."); ¶ 52 ("Sisk and the Day Rate Inspectors' work must adhere to the quality standards put in place by BWS and/or its clients.") (admitted in *Sisk*, Doc. 8 ¶ 52, "Defendant admits the factual allegations in Paragraph 52.").

administering BWS's business operations. Ex. 2 ¶¶ 18-19, 27-28.[2]

### III.   ARGUMENTS AND AUTHORITIES.

#### A.   Legal standard for collective actions under the FLSA § 216(b).

"A district court's decision to certify a FLSA collective is governed by … [*Swales*, 985 F.3d 430]." *Alvarez v. NES Glob. LLC,* No. 4:20-CV-1933, 2021 WL 3571223, at *2 (S.D. Tex. Aug. 11, 2021). "That decision discarded the long-used [*Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)] two-step approach in which a district court would first consider the issue of whether a collective should be conditionally certified, followed by a notice and opt-in period, followed by a decertification stage." *Alvarez,* 2021 WL 3571223, at *2. "In lieu of this old approach, *Swales* instructs that 'a district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case, not after a lenient, step-one 'conditional certification.' Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs.'" *Id.* (quoting *Swales*, 985 F.3d at 434). "In other words, the district court proceeds directly to step two of *Lusardi*—the 'similarly situated' inquiry—with the benefit of pre-certification discovery if needed." *Id.*

While *Swales* eliminated mandatory adherence to the two-step process under *Lusardi*, it nevertheless maintains the same "similarly situated" standard. *See Segovia v. Fuelco Energy LLC,* No. SA-17-CV-1246-JKP, 2021 WL 2187956, at *7 (W.D. Tex. May 28, 2021) ("Although *Swales* brings step-two of *Lusardi* to the forefront of FLSA collective actions, it does not alter the meaning of "similarly situated" as honed and considered through judicial decision since the phrase first appeared undefined in the statute."); *see also Badon v. Berry's Reliable Res., LLC*, No. 19-12317, 2021 WL 933033, at *5 (E.D.

---

[2] *See also Sisk*, Doc. 1 ¶ 57 ("At all relevant times, BWS and/or its clients maintained control over Sisk and the Day Rate Inspectors via hiring, firing, discipline, timekeeping, payroll, and other employment practices.") (admitted *Sisk*, Doc. 8 ¶ 57, "Defendant admits the factual allegations in Paragraph 57."), ¶ 58 ("Sisk and the Day Rate Inspectors do not have the power to hire or fire any employees.") (admitted *Sisk*, Doc. 8 ¶ 59, "Defendant admits the factual allegations in Paragraph 58.").

La. Mar. 11, 2021).

The similarly situated "does not mean that the class members must be identically situated."
*Cotton-Thomas v. Volvo Grp. N. Am., LLC,* No. 3:20-CV-113-GHD-RP, 2021 WL 2125003, at *2 (N.D.
Miss. May 25, 2021). It just means "that the Plaintiff must show 'a demonstrated similarity' among the
purported class members, as well as a 'factual nexus' that binds the class members' claims together
such that hearing the claims in one proceeding is fair to all parties and does not result in an
unmanageable trial of individualized inquiries." *Id.* (quoting *Swales,* 985 F.3d at 443); *see also Alvarez,*
2021 WL 3571223, at *2. "In general, in order to determine if purported class members are sufficiently
similarly situated, courts consider (1) the factual and employment settings of the purported class
members; (2) the various defenses available to the defendant and if any defenses are individualized
rather than applying to the class as a whole; and (3) fairness and procedural considerations." *Id.* (citing
*Swales*, 985 F.3d at 437).

> **B.      Russell and the Day Rate Workers are similarly situated because their FLSA
> claims depend on BWS's pay practice, not on any individualized inquiries.**

The relevant inquiry to determine whether workers are similarly situated is whether the
plaintiffs have sufficiently shown that other current and former employees were together the victim
of a single decision, policy, or plan. *See Segovia*, 2021 WL 2187956, at *8 ("[T]he pertinent inquiry is
whether the plaintiffs have 'demonstrated similarity among the individual situations.'").

In this case, Russell and the other Day Rate Workers were all victims of the same pay policy:
BWS's decision to pay them a daily rate, with no overtime, and no guaranteed salary. To avoid liability,
BWS must prove that Russell and the other Day Rate Workers were paid on a salary basis. BWS cannot
avail itself of the FLSA's exemptions if it pays employees purely on a day rate basis and does not pay
them a guaranteed salary in addition to or separate from that day rate pay. *Helix*, 2023 WL 2144441,
at *3. In light of *Helix*, the only question that needs answered is whether BWS can prove it paid a

guaranteed weekly amount to Russell and the Day Rate Workers separate from or in addition to their day rate pay. If the answer to that question is "no," BWS will be found in violation of the FLSA pursuant to *Helix*. And most importantly, that is the same for Russell's claims and any other Day Rate Worker. So there is "a 'factual nexus' that binds the class members' claims together such that hearing the claims in one proceeding is fair to all parties and does not result in an unmanageable trial of individualized inquiries." *Cotton-Thomas,* 2021 WL 2125003, at \*2 (quoting *Swales,* 985 F.3d at 443); *see also Alvarez,* 2021 WL 3571223, at \*2.

BWS uniformly applied its pay policy to all its inspectors, regardless of their duties or where they worked. Ex. 2 ¶ 20 ("I know that BWS failed to pay other inspectors for all hours worked, including their overtime."); ¶ 22 ("BWS paid all its inspectors the same way: a set daily rate for each day worked."); Doc. 15 at ¶ 3 ("Defendant paid their employees (including Plaintiff) a set "day rate" for each day worked regardless of the total number of hours worked in a week."); *see also Sisk*, Doc. 1 ¶ 24 ("BWS uniformly applied its policy of paying its Inspectors, including Sisk, a day rate with no overtime compensation.") (BWS in its answer, Doc. 8, neither admitted nor denied); ¶ 25 ("BWS applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.") (BWS in its answer, Doc. 8, neither admitted nor denied).

*Alvarez*, 2021 WL 3571223, is instructive. In *Alvarez*, the plaintiff alleged he was misclassified as exempt from overtime because he was paid on a day rate basis, as opposed to a salary basis; the issue was purely about whether the pay practice violated the FLSA and disparate job duties did not matter for evaluating whether that question could be answered collectively. *Id.* at \*2 ("Alvarez contends that the FLSA violations at issue turn on a common pay practice that [defendant] used for all members of the proposed collective, who are therefore similarly situated to one another."). The plaintiffs defined the collective as: "All individuals employed by or working on behalf of [defendant] who were

paid on a day rate with no overtime in the past three years." *Id.*; *compare with* Doc. 15 at ¶ 11 (defining

the proposed collective in nearly identical fashion as "[a]ll current and former inspectors who worked

for or on behalf of BWS Inspection Services, LLC that were paid a day rate at anytime in the past

three (3) years (the "Day Rate Workers")). Applying *Swales*, the *Alverez* Court certified the collective

of day-rate workers "[b]ecause the salary basis test component of [the defendant's] defense can be

decided collectively." *Alvarez*, 2021 WL 3571223, at *4-5.

The same is true here. The evidence (Russell's sworn testimony and documentary evidence of

BWS's pay practice) demonstrates that BWS subjects all of its inspectors to a common and uniform

pay practice regardless of their specific job duties. That plan also fails to pay Russell and the Day Rate

Workers a guaranteed minimum weekly salary. There can be little doubt that Russell and the Day Rate

Workers are similarly situated as it pertains to BWS's day-rate pay scheme at issue in this case.

This case does not involve the fact-intensive, independent contractor inquiry at issue in *Swales*,

985 F.3d at 443 (applying the economic-realities test to determine whether workers are employees or

contractors often involves highly-individualized issues of employer control). Rather, this case turns

on the question of whether BWS's policy of paying a day rate without overtime violates the FLSA.

The evidence provided establishes, just as it did in *Alvarez*, that this issue is appropriately litigated on

a collective basis. Therefore, the Court should permit Russell to send Court-authorized notice to the

Day Rate Workers.

**C.**      **Notice is appropriate even with variations in job titles or duties.**

Courts applying *Swales* regularly certify collective actions where the plaintiff demonstrates that

each member of the proposed collective had the same job title or job description and was similarly

paid for their work. *See Collins v. Pel-State Bulk Plant, LLC*, No. 20-cv-83, 2021 WL 5234968, at *3 (W.D.

Tex. Sept. 29, 2021) (certifying a collective action when each member of the proposed collective

shared the same job titles, performed the same job duties, was subject to the same expectations, and

was compensated in the same manner); *Sterling v. Greater Hous. Transp. Co.*, No. H-20-910, 2021 WL 2954663, at *2-3 (S.D. Tex. July 14, 2021) (same).

Here, not only are BWS's pay practices identical for Russell and the Day Rate Workers, but they also share the same basic job duties: they were all inspectors in the pipeline industry. *See* Doc. 15 ¶ 20; *see also Sisk*, Doc. 1 ¶ 20. Every BWS inspector provided inspection services to BWS's oil and gas clients. *Id.*; Ex. 2 ¶¶ 15-18, 23-25. While these inspectors may have worked in different places or had slight variations on their "inspector" job titles, that does not preclude a finding that they are similarly situated. *Torres v. Chambers Protective Services, Inc.*, No. 20-CV-212-H, 2021 WL 3419705, at *6 (N.D. Tex. Aug. 5, 2021); *Loy v. Rehab Synergies, LLC*, No. 7:18-cv-00004, 2021 WL 3931926, at *11 (S.D. Tex. Sept. 2, 2021). The fact that employees "have different supervisors, work on different teams, have some varying job duties, and work in different locations" doesn't prevent a finding that they are similarly situated. *Torres*, 2021 WL 3419705, at *6. Such "differences are separate from the alleged unlawful practice—failure to pay overtime wages"—because "none of these differences diminish [the plaintiff's] evidence" of the alleged unlawful practice. *Id.* For example, in *Loy*, Judge Alvarez held the fact that the purported collective action members "'worked in five different job titles, reporting to different managers at different facilities at different times within the last six years;' worked different schedules; [and] had different 'productivity requirements'" did not preclude a finding that they were similarly situated because these differences were "not material to the merits question in this case." *Loy*, 2021 WL 3931926, at *11 (footnote omitted) (internal quotation marks omitted).

*Fenley v. Wood Group Mustang, Inc.*, 325 F.R.D. 232 (S.D. Ohio 2018), provides an even better example. In *Fenley*, the court found that a group of day-rate pipeline inspectors were similarly situated under the FLSA. The court said the defendant's exemption defenses would not be highly individualized because the day rate inspectors were all classified and paid the same way and the inspectors shared common primary "inspection" job duties. *Id.* at 243-45. The court also said

"proceeding collectively is an especially compelling approach given the fact that many Opt-In Plaintiffs still employed by [defendant]—or presumably, in the pipeline industry in general—are away from their homes for extended periods of time and/or are working on projects that require their attendance seven days per week." *Id.* at 247. So ultimately, any differences among the plaintiffs did not outweigh the similarities of the practices to which they were allegedly subjected. *Id.* (citing *Cornell v. World Wide Bus. Servs. Corp.*, No. 2:14-CV-27, 2015 WL 6662919, at *2 (S.D. Ohio Nov. 2, 2015)).

Again, the same is true here: the inspectors all share core "inspector" job duties and were all subject to the same classification and compensation scheme (they were all classified as exempt and paid on a day rate basis). BWS's exemption defenses therefore will not be highly individualized, and procedural fairness weighs heavily in favor of finding that Plaintiffs and the putative collective members are similarly situated under 29 U.S.C. § 216(b). Russell's motion should be granted.

**IV.    THE COURT SHOULD APPROVE AND ADOPT RUSSELL'S PROPOSED NOTICE PLAN.**

*Swales* dictates that, while a district court may facilitate notice to potential plaintiffs for case management purposes, "it cannot signal approval of the merits or otherwise stir up litigation." *Swales*, 985 F.3d at 434. "These are the only binding commands on district courts." *Id.* As such, Plaintiffs submit following proposed Notice Plan, which includes language for the proposed notice that is fair, neutral, accurate, and does not seek to "stir up litigation," but merely seeks to inform these workers of their rights under the FLSA.

| DEADLINE | SUBJECT |
|---|---|
| **10 Days from Order Approving Notice to Potential Class Members** | BWS shall disclose the names, current or last known addresses, email addresses (both personal and work, if available), phone numbers, and dates of employment of those described in the above-referenced group of Day Rate Workers to be notified in a usable electronic format. |
| **20 Days from Order Approving Notice to Potential Class Members** | Plaintiff's Counsel shall send the Court-approved Notice (Russell's proposed notice is attached as Ex. 1) and Consent Forms to the Day Rate Workers via U.S. First Class Mail, email, and text message. |

| DEADLINE | SUBJECT |
|---|---|
| **60 Days from Mailing of Notice and Consent Forms to Potential Class Members** | The Day Rate Workers shall have 60 days to return their signed Consent forms to Plaintiff's Counsel for filing with the Court. |
| **30 Days from Mailing of Notice and Consent Forms to Potential Class Members** | Plaintiff's Counsel is authorized to send a second, identical copy of the Notice and Consent Forms to the Day Rate Workers via mail, email, and text.<br><br>Plaintiff's Counsel is further authorized to follow up with the Day Rate Workers whose Notice and Consent Forms were returned as undeliverable with a phone call to obtain an updated address and/or email address to ensure receipt of the Notice packet. |

## A.     Russell's proposed notice and plan should be approved.

Russell's proposed judicial notice (Ex. 1) achieves the ultimate goal of providing employees with "timely, accurate, and informative" notice concerning the pendency of the collective action. *See Hoffmann-La Roche,* 493 U.S. at 172. Thus, Russell requests his proposed notice (Ex. 1) be approved and it be sent to all Day Rate Workers by text, e-mail, and regular mail. "[T]he general rule is that absent reasonable objections to plaintiffs' proposed [] notice, the plaintiffs should be allowed to use the language of their choice in drafting the notice." *Vargas v. Richardson Trident Co.*, No. H-09-1674, 2010 WL 730115, at *11 (S.D. Tex. Feb. 22, 2010). Russell's Proposed Notice Plan includes a fully compliant, accurate, and neutral notice. There is no reason here to alter Russell's proposed notice. Moreover, the proposed methods of sending notice are appropriate in the oil and gas industry, and account for the nature of oil and gas work which requires extended periods of travel where inspectors are away from home for stretches of time. The Court should approve and adopt Plaintiffs' Proposed Notice Plan in full.

## B.     Notice should be sent by text, e-mail, and regular mail.

The Court should order notice be sent via e-mail and text, in addition to regular mail. E-mail notice furthers the broad remedial purpose of the FLSA and has been widely adopted by federal courts throughout the country. *See, e.g., Kraft v. Freight Handlers, Inc.,* 2019 WL 3854989, *6 (M.D. Fla. May 21,

2019); *Lewis v. Huntington Nat. Bank*, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ("using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); *Butler v. Direct SAT USA, LLC*, 876 F. Supp.2d 560, 575 (D. Md. 2012) (allowing e-mail notice to putative class members because communication through e-mail is now the "norm."); *Denney v. Lester's, LLC*, 2012 WL 3854466, at *4 (E.D. Mo. Sept. 5, 2012); and *In re Deloitte & Touche, LLP Overtime Litig.*, 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012) (noting that "communication through email is [now] the norm.").

In the same way, communication via text message will increase the chance of the class members receiving and reading notice. *See Landry v. Swire Oilfield Servs., L.L.C.*, 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017). Additionally, "given the amount of junk mail that people receive, email and text message likely are more effective methods for communicating with potential class members than traditional first-class mail." *Landry*, 252 F. Supp. 3d at 1130; *see also Irine v. Destination Wild Dunes Mgmt., Inc.*, 132 F. Supp. 3d 707, 711 (D.S.C. 2015) ("[T]ext messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone serving as the most consistent and reliable method of communication"); *Regan v. City of Hanahan*, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017); *Vega v. Point Security, LLC*, 2017 WL 4023289, at *4 (W.D. Tex. Sept. 13, 2017) ("[I]n the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that [sic] using email and texts to notify potential class members is entirely appropriate.")

### C.     A sixty-day notice period is appropriate.

Notice periods may vary, however, courts have routinely held that a sixty (60) to ninety (90) day notice period is appropriate in FLSA cases. *See, e.g., Fiore v. Goodyear Tire & Rubber Co.*, 2011 WL 867043, at *4 (M.D. Fla. March 10, 2011) (setting notice period at 90 days); *Ballew v. Lennar Corp.*, 2008 WL 4218137, at *1 (M.D. Fla. Sept. 11, 2008) ("The Court further finds the 90 day period to be

reasonable…"); *Aguirre-Molina v. Truscapes SW Fla Inc.,* No. 2:15-CV-608-FTM-38CM, 2016 WL 4472992, at *7 (M.D. Fla. Aug. 3, 2016), *adopted,* No. 2:15-CV-608-FTM-38CM, 2016 WL 4441468 (M.D. Fla. Aug. 23, 2016) (approving sixty day notice period); *Abdul-Rasheed v. KableLink Commc'ns, LLC,* No. 8:13-CV-879-T-24, 2013 WL 5954785, at *5 (M.D. Fla. Nov. 7, 2013) (approving sixty day notice period).  Here, Russell requests a sixty-day notice period for Day Rate Workers to return their consent to join form and opt into the case.

**D.      Class members should be allowed to electronically execute their consent forms.**

Federal Courts throughout the United States "recogniz[e] that 'we live in a time when all manner of commercial transactions are routinely cemented by electronic submission'" and "courts have approved the use of online, electronic signature opt-in forms." *Landry*, 252 F. Supp. 3d at 1130 (quoting *Mraz v. Aetna Life Ins. Co.*, 2014 WL 5018862, at *5 (M.D. Pa. Oct. 7, 2014); *White v. Integrated Elec. Techs., Inc.,* 2013 WL 2903070, at *9 (E.D. La. June 13, 2013) (granting Plaintiffs' request to allow class members to execute electronic consent forms); *Jones v. JGC Dallas LLC*, 2012 WL 6928101, at *8 (N.D. Tex. Nov. 29, 2012), *adopted*, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013) (allowing class members to be given the option to execute their consent forms online via electronic signature service). At the federal level, the Electronic Signatures in Global and National Commerce Act, effective since 2000, "facilitate[s] the use of electronic records and signatures in interstate or foreign commerce." 15 U.S.C. § 7001, *et seq*. Therefore, class members should have the option to sign their consent to join forms electronically. Giving class members this option is in line with the FLSA's remedial purposes and would ensure that class members can submit their consent forms without additional obstacles standing in their way.

**E.      BWS should be required to produce names and contact information of the Day Rate Workers to carry out notice.**

To effectuate notice, BWS should be compelled to provide the complete list of all known names, last-known addresses, email addresses, phone numbers (mobile and home), and the dates of

employment of the putative collective members. Courts routinely order the production of such information for the purpose of issuing notice. *See, e.g., Clarke v. Pei Wei Asian Diner, LLC.*, No. 3:20-CV-00800-N, 2020 WL 7122861, at *3 (N.D. Tex. Dec. 4, 2020); *see also Diaz v. Applied Mach. Corp.*, No. CV H-15-1282, 2016 WL 3568087, at *13 (S.D. Tex. June 24, 2016).

## V.    CONCLUSION.

Russell respectfully requests the Court grant his Motion, compel BSW to provide the requisite information to facilitate sending notice, and approve his Notice Plan in full. Russell further requests all such other relief to which he may be entitled at law or in equity.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
    **Michael A. Josephson**
    Texas Bar No. 24014780
    **Andrew W. Dunlap**
    Texas Bar No. 24078444
    **Olivia R. Beale**
    State Bar No. 24122166
    **JOSEPHSON DUNLAP LLP**
    11 Greenway Plaza, Suite 3050
    Houston, Texas 77005
    713-352-1100 – Telephone
    713-352-3300 – Facsimile
    mjosephson@mybackwages.com
    adunlap@mybackwages.com
    obeale@mybackwages.com

    **AND**

    **Richard J. (Rex) Burch**
    Texas Bar No. 24001807
    **BRUCKNER BURCH PLLC**
    11 Greenway Plaza, Suite 3025
    Houston, Texas 77046
    713-877-8788 – Telephone
    710-877-8065 – Facsimile
    rburch@brucknerburch.com

    **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served by ECF electronic filing on all known parties on February 28, 2023.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred in good faith with counsel for Defendant prior to filing this motion on numerous occasions, both telephonically and through email correspondence. Defense Counsel confirmed that the parties are at an impasse and Defendant opposes Plaintiff's Motion in full.

*/s/ Andrew W. Dunlap*
**Andrew W. Dunlap**