IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| WILLIAM RUSSELL, individually and on behalf of all others similarly situated, § § § § *Plaintiff*, § § vs. § § BWS INSPECTION SERVICES, LLC, § § § *Defendant*. § | Civil Action No.: 6:22-CV-00910-ADA-JCM |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR DISTRIBUTION OF COURT-AUTHORIZED NOTICE**

Defendant BWS Inspection Services, LLC ("BWS") files its response to Plaintiff William Russell's Motion for Distribution of Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b), ECF 19, (the "Motion") as follows:

**INTRODUCTION**

The Fifth Circuit strictly prohibits courts from facilitating and issuing notice in collective actions pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") to individuals who cannot participate in the collective in the first instance.  The putative class members Plaintiff William Russell seeks to invite to join his lawsuit ultimately cannot do so because Russell entered into an agreement expressly waiving the ability to participate in an FLSA lawsuit against BWS on a collective basis.  Russell may only pursue his claims on an individual basis and issuing notice to others who cannot participate in this lawsuit merely "stirs up litigation," which the United States Supreme Court unequivocally proscribes.  The Motion should be denied.

1. **Notice to join a lawsuit cannot issue where the plaintiff is obligated by agreement to proceed on an individual, and not a collective, basis.**

The United States Supreme Court and the Fifth Circuit prohibit district courts from stirring up litigation by facilitating notice of a collective action to individuals who are not able to

1

participate in the litigation. In *Hoffmann-La Roche v. Sperling*, the Supreme Court noted that district courts have the cabined authority to "facilitat[e] notice to **potential plaintiffs**." 493 U.S. at 169 (emphasis added). *Hoffmann-La Roche* stopped short of defining who is actually a "potential plaintiff," but the Fifth Circuit has provided definitive guidance as to who is not one.

In *JPMorgan*, the plaintiffs moved to conditionally certify an FLSA collective action. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 498 (5th Cir. 2019). The defendant challenged certification on the ground that some of the putative collective members waived their rights to proceed in a collective action. *Id*. Nonetheless, the district court certified the class inclusive of those with arbitration agreements. *Id*. The defendant filed a writ of mandamus. *Id*. The Fifth Circuit, upon review, ultimately found that the district court erred by authorizing issuance of notice of the lawsuit to individuals who could not ultimately proceed in the litigation due to the binding arbitration agreements with class waivers. *Id*. at 502; *see also id*. at 503 n.19 ("[D]istrict courts must respect the existence of arbitration agreements and must decline to notify [employees with arbitration agreements], who waived their right to proceed collectively, of the pending action."). The Fifth Circuit has recently reaffirmed its predilection for preventing the use of the FLSA's notice mechanism as a claim solicitation tool. *See In re A&D Interests, Inc.*, 33 F.4th 254, 259 (5th Cir. 2022) (granting writ of mandamus where district court authorized notice to individuals with arbitration agreements containing class waivers despite controlling pronouncement in *JPMorgan*).[1]

---

[1] In granting a writ of mandamus on this issue, which requires showing that the error is "truly irremediable on ordinary appeal," *JPMorgan*, 916 F.3d at 499, the Fifth Circuit appears to be signaling the harm importance of avoiding improperly issuing notice because of the irreparable harms that flow from it. *See A&D Interests*, 33 F.3d at 257 ("The question of whether district courts may send notice of a collective action to plaintiffs who have signed arbitration agreements was important enough in *JPMorgan* to justify mandamus relief. It remains important.") (internal citation omitted).

The rule to take away from *Hoffmann-La Roche*, *JPMorgan*, and *A&D Interests* is simple: "district courts may not send notice to an employee with a valid arbitration agreement unless the record shows that nothing in the agreement would prohibit that employee from participating in the collective," *JPMorgan*, 916 F.3d at 501; therefore, facilitating or sending notice of a pending collective action to someone who is prohibited from participating because of a binding class waiver "'merely stirs up litigation,' which is what *Hoffmann-La Roche* flatly proscribes," *id*. at 502; as such, "the parties' interests are so important that a district court improperly issuing notice "clearly and indisputably err[s]," *A&D Interests*, 33 F.4th at 259.

### 2. <u>Russell executed a class waiver agreement that precludes him from proceeding in a collective action against BWS.</u>

#### a. <u>The Motion must be denied because Russell does not contest that he is subject to a binding class waiver.</u>

As an initial matter, Russell does not contest the application of his class waiver. The panel in *JPMorgan* explained that the burden of showing the existence of a class waiver agreement arises only when there is a "genuine dispute" about the existence and validity of the agreement. 916 F.3d at 502-03; *accord Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020) (explaining that, "[i]f no plaintiff contests those assertions, then the court may not authorize notice to the employees whom the defendant alleges entered valid arbitration agreements."). Russell does not contest the validity of any class waivers he (or anyone else) has with BWS.

#### b. <u>Russell's class waiver is unequivocal and covers the claims he seeks to pursue on a collective basis.</u>

The "*Dispute Resolution and Jury Waiver Agreement*" ("Agreement") entered into by BWS and Russell, provides, in relevant part:

<u>Claims Covered by this Agreement</u>

... you and BWS mutually agree that **any and all disputes, claims, or controversies** (Claim" or "Claims") against BWS or any of its clients (who are

3

> third party beneficiaries of this Agreement) including, but not limited to, all claims arising out of your work with or on behalf of BWS,…include, but are not limited to, claims under…**the Fair Labor Standards Act**.
>
> …
>
> Class/Collective Action Waiver
>
> You and BWS intend and agree that (i) neither may assert any class, collective or representative action against each other, (ii) the procedures for asserting a class, collective or representative action apply to any proceeding in which a Claim is asserted; (iii) **neither may proceed with any Claim as a member of a collective or class action with regard to a Claim, nor may either participate in any manner in a class or collective action, whether as a named plaintiff, as an opt-in or in any representative capacity**; and (iv) you and BWS may each only submit or assert a Claim individually against the other, including any Claim asserting a pattern or practice of unlawful conduct, and may not seek to represent the interests of any other person or entity.
>
> You and BWS agree that any Claim asserted by either of you will not be joined, consolidated or heard together with any Claim of any other person or entity, and expressly waive the right to commence, be a party to, or a class member of any group, collective action or class action filed in any court or other forum. **This waiver includes but is not limited to any claims for wages, overtime, compensation, damages, attorneys' fees or other relief in sought or asserted in a collective manner pursuant to 29 U.S.C. 216(b) or any other provision of the Fair Labor Standards Act or its implementing regulations or class or collective action under other federal, state or local law.**

*See* Exhibit 1-A (emphasis added).

Here, Russell "brought this collective action alleging BWS misclassified him and other inspectors like him as exempt from the overtime requirements of the Fair Labor Standards Act." ECF No. 19 at 1.  "Russell requests the Court approve notice of this collective action be sent to:

> **All current and former inspectors who worked for or on behalf of BWS Inspections Services, LLC that were paid a day rate at any time in the past three (3) years (the 'Day Rate Workers').**"

*Id*. (emphasis in original).  There can be no genuine dispute that the FLSA claim he is asserting against BWS is of the same nature as that he waived pursuing on a collective basis.  Russell cannot now reverse course and attempt to litigate against BWS in a collective action.

On the backdrop of Russell's inability to proceed collectively, the putative class members cannot receive court-authorized notice of this litigation that has no bearing on any of their purported claims. *JPMorgan*, 916 F.3d at 503 ("Plaintiffs insist, to the contrary, that all putative collective members—including Arbitration Employees—have a right to be given notice of any FLSA claims that they might have, even if they cannot join the current collective action. Not so. Neither FLSA's text nor *Hoffmann-La Roche* offers any support whatsoever for that notion.").

    c. <u>Russell must conduct discovery on the validity of the class waiver before moving to issue notice based solely on his contentions and affidavit.</u>

Even if Russell were to contest BWS' invocation of the class waiver, issuing notice now would be premature given the procedural posture of the case. *Id*. ("But if a plaintiff contests the defendant's assertions, then—before authorizing notice to the alleged 'arbitration employees'—the court must permit the parties to submit additional evidence on the agreements' existence and validity."). Russell filed his complaint on February 16, 2023. ECF No. 15. On February 28, 2023—before BWS' deadline to answer his complaint—Russell filed the instant Motion seeking to issue notice. ECF No. 19. Not surprisingly, Russell has not conducted any discovery. Had discovery taken place, Russell presumably would have sought to discover any documents affecting the way his purported collective action may (or, in actuality, may not) proceed. Thus, even if proper (which it is not), issuing notice is premature given the lack of discovery conducted on these issues.

**3. <u>Russell's proposed notice is defective and should be modified if the Court determines notice should issue.</u>**

If the Court orders notice to issue, Russell's proposed language should be modified in several respects. First, the proposed notice fails to instruct the potential class members that they have a right to seek counsel of his or her choice. Proceeding with counsel of choice is a fulcrum

5

on the judicial process. Clients choose the lawyers; not the other way around. Courts in this district have held that notice of collective actions should inform unsuspecting individuals of their right to choose a lawyer. *See*, *e.g.*, *Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, 962 (W.D. Tex. 2016) (requiring plaintiffs to revise language advising of right to seek separate counsel); *accord Thrower v. UniversalPegasus, Int'l Inc.*, 484 F.Supp.3d 473, 488 (S.D. Tex. 2020) ("The court agrees with the defendants and finds that the proposed notice must advise putative class members of their right to retain separate counsel and pursue their rights independently from the class."); *Reyes v. Quality Logging, Inc.*, 52 F. Supp. 3d 849, 853 (S.D. Tex. 2014) ("[t]he notice must inform potential opt-in plaintiffs that they may contact any attorney of their choosing to discuss the case.") (citing *Yaklin v. W-H Energy Servs., Inc.*, No. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008) (rejecting proposal that did not include language respecting potential plaintiffs' right to choose counsel).

Second, sending requests via email is potentially harassing and can easily overwhelm potential plaintiffs simply going about their daily lives. In *Thrower*, the court described some of the problems that email communications pose:

> "While e-mail is engrained in the fabric of our world's communication structure, there is no denying that it has become saturated and unwieldy…. Now, our virtual mailboxes are inundated with hundreds or thousands of messages. When it comes to our personal e-mail accounts, we have conditioned ourselves to tune the messages out, assuming they are unwanted advertisements, social-media notifications, unwelcome chain mail, a fake Nigerian prince seeking to transfer large sums of money out of the country, phishing scams, etc. The list goes on."

484 F. Supp. 3d at 489.

Russell never adequately explains why the usual method of providing notice by first-class mail would not be effective in this case. Curiously, Russell requests court-authorized notice while swearing in his declaration that, "based on [his] conversations with other BWS inspectors, [he]

6

know[s] other inspectors would be interested in joining this claim"—a claim which he filed less than a month ago. "Given the real risk of abuse of the collective-action device," and the Fifth Circuit's mandate that district courts "must take care to avoid even the appearance of judicial endorsement of the merits of the action," it begs the question: if Russell has had communications with those interested in joining the lawsuit, why is court-approved notice necessary for them to do so?

Moreover, in his request for the Court to send communications to individuals by varied mediums, including email, Russell urges that email notice "has been widely adopted by federal courts throughout the country." ECF No. 19 at 12. He relies exclusively on a few select cases from federal courts outside of Texas. *Id.* But at least one court in this district has rightfully elected to alleviate some of the problems notice by email poses. *See Garcia v. TWC Admin., LLC*, No. SA:14-CV-985-DAE, 2015 WL 1737932, at *4-5 (W.D. Tex. Apr. 16, 2015) (not allowing contact by email because mail was sufficient and allowing another method of contact if mail was returned undeliverable).

The third concern with Russell's proposed language relates to the inappropriate nature of text messages under these circumstances. "Courts across the country are split as to whether to permit notice to potential plaintiffs via text message in addition to e-mail and mail." *Thrower*, 484 F. Supp. 3d at 489. Russell, in his expected swing for the fence to drum up participants, makes no attempt to describe with any particularity why soliciting participation by text message is necessary. There are circumstances where it is appropriate, but there is no suggestion that this is one such instance. *Cf. Butler v. TFS Oilfield Servs., LLC*, No. SA-16-CV-1150-FB, 2017 WL 7052879, at *7 (W.D. Tex. Sept. 26, 2017) (finding text messages "reasonable" because the putative class consisted of "workers who disperse to non-centralized and remote worksites throughout Texas and

7

other states where they spend long hours away from their home and residences."). Because Russell has not provided justification for something as intrusive as obtaining personal phone numbers (without their knowledge), the Court should decline his request to bring his gripes with BWS to the text message inboxes of others.  Traditional mail, which is where people for a long time now have been accustom to receiving communications about various matters, is sufficient here.  Russell does not argue otherwise.

## CONCLUSION

Russell cannot proceed collectively in this litigation.  As such, the Court should reject Russell's request to send notice of this lawsuit to other potential plaintiffs, which would only stir up litigation, because they cannot ultimately proceed with him.  If the Court determines that Russell is eligible to proceed collectively, notice should not issue because discovery on the issue of enforceability is incomplete.  After such discovery is complete, the Court should revise the notice to only include traditional mail, since Russell has not made the showing that other methods are necessary and appropriate in this case.

Dated:  March 14, 2023

Respectfully submitted,

*/s/ William R. Stukenberg*
William R. Stukenberg, Attorney-in-Charge
Texas Bar Number: 24051397
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas  77002
(713) 226-6611 telephone
(713) 226-6211 facsimile
wstukenberg@porterhedges.com

OF COUNSEL:
Jamie L. Houston
Texas Bar Number: 24097847
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, Texas  77002
(713) 226-6608 telephone
(713) 226-6208 facsimile
jhouston@porterhedges.com

ATTORNEY FOR DEFENDANT
BWS INSPECTION SERVICES, LLC

ATTORNEY FOR DEFENDANT
BWS INSPECTION SERVICES, LLC

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a true and correct copy of the foregoing document has been served by ECF transmission on this the 14th day of March 2023, upon the following:

Michael A. Josephson
Andrew W. Dunlap
Olivia Beale
JOSEPHSON DUNLAP LLP
11 Greenway Plaza, Suite 3050
Houston, Texas  77046
mjosephson@mybackwages.com
adunlap@mybackwages.com
obeale@mybackwages.com

Richard J. (Rex) Burch
BRUCKNER BURCH PLLC
11 Greenway Plaza, Suite 3025
Houston, Texas  77046
rburch@brucknerburch.com

                                      */s/ William R. Stukenberg*
                                      William R. Stukenberg